PATROLMAN'S BENEVOLENT ASSOCIATION OF MONT-
CLAIR, NEW JERSEY, LOCAL No. 53, PLAINTIFF, v.
TOWN OF MONTCLAIR, A MUNICIPAL CORPORATION,
AND THEODORE MacLACHLAN, DIRECTOR OF DEPART-
MENT OF PUBLIC SAFETY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 5, 1974.

Mr. *Andrew F. Zazzali, Jr.* for plaintiff (*Messrs. Zazzali and Zazzali,* attorneys).

Mr. *Frank X. McDermott* for defendants (*Messrs. Apruzzese & McDermott,* attorneys).

ANTELL, J. S. C. By its verified complaint plaintiff claims to be the representative "designated and selected" for all the police officers of the Town of Montclair for purposes of collective negotiation and seeks an order compelling defendant employer to negotiate in good faith as to terms and conditions of employment. The threshold question is whether plaintiff's disputed status as negotiating representative may be resolved by the court without a prior exhaustion of administrative remedies.

The application is made under the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A–1 *et seq.* Provision for ascertaining negotiating representatives is made in section 5.3 thereof in the following language:

> Representatives designated or selected by public employees for the purposes of collective negotiation by the majority of the employees in a unit appropriate for such purposes or by the majority of the employees voting in an election conducted by the commission as author-

ized by this act shall be the exclusive representatives for collective negotiation concerning the terms and conditions of employment of the employees in such suit.

It is apparent that two alternatives are envisioned. The first merely requires that the exclusive representatives shall be whichever are "designated or selected" by the public employees. The other is more specific, leaving their selection to the outcome of an election conducted by the Commission Public Employee Relations. Plaintiff argues that since, under the first alternative, the statute is indefinite as to the mode by which the selection must be made, omitting any reference to Commission participation, the Legislature intended the supervised election as the sole administrative remedy obtainable from the Commission; that resort to the administrative process is therefore necessary only where the provision for a supervised election is invoked, and unnecessary where the exclusive representative has been, or will be, otherwise designated or selected. In this instance plaintiff maintains that no election is required; that its status as negotiating representative was achieved through organization membership by a majority of the employees and voluntary recognition thereof by the defendant within the sense of federal cases decided under the National Labor Relations Act, 29 *U. S. C. A.* § 151 *et seq.* Both bases for the claim are denied by defendant, and it is this dispute which the court is asked to resolve.

The Legislature has declared as the public policy of this State that the best interests of the people are served by the voluntary mediation of public employer-employee disputes under the guidance and supervision of "a governmental agency." *N. J. S. A.* 34:13A–2. Section 5.1(a) of the act establishes a Division of Public Employment Relations, having as its exclusive concern matters of public employment related, among other things, to determining "negotiating units, elections, *certifications* * * *" (Emphasis supplied). Within the Division was created the New Jersey Public Em-

ployee Relations Commission, This body is charged with the duty of regulating and making policy for employer-employee relations in public employment, "including enforcement of statutory provisions concerning representative elections *and related matters*." (Emphasis supplied). *N. J. S. A.* 34:13A–5.2. More specifically, the Commission is empowered

* * * to resolve questions concerning representation of public employees by conducting a secret ballot election or *utilizing any other appropriate and suitable method designed to ascertain the free choice of the employees.* [*N. J. S. A.* 34:13A–6(d), emphasis supplied]

Other paragraphs of the foregoing section vest the Commission with ancillary powers necessary to carry out its primary obligations. Various provisions of its regulations demonstrate that the Commission intended to exercise its full authority under the act and understands that its power to resolve representation questions goes beyond the mere conduct of an election. Under *N. J. A. C.* 19:10–1.1 the "Representation Proceeding" is defined as

* * * a procedure under these rules and regulations for the purpose of determining the majority representative of employees, if any, in an appropriate collective negotiating unit or a question of controversy concerning the representation of public employees for the purpose of collective negotiations.

Nothing in the foregoing language suggests that the proceeding is limited to the conduct of an election.

The representation proceeding before the Commission is begun by the filing of a petition for certification by any public employee, group of public employees, or any individual or employee organization claiming to be the majority representative of public employees in an appropriate unit. *N. J. A. C.* 19:11–1.1. "Certification" is defined in *N. J. A. C.* 19:10–1.1 as "the designation by the Executive Director or the Commission of the employee organization as the majority representative of employees in an appropriate unit." *N. J. A. C.* 19:11–1.2 sets forth the required contents of the peti-

tion, and included therein is a "showing of interest as defined in Section 1.1 (Definitions) of this Subtitle of not less than 30 per cent of the employees in the unit alleged to be appropriate." Some idea of the variety of ways, other than an election, by which the Commission has chosen to inform itself of the employees' choice may be gathered from the following definition of "showing interest" as it appears in *N. J. A. C.* 19 :10–1.1:

* * * a designated percentage of public employees in an allegedly appropriate negotiating unit, or a negotiating unit determined to be appropriate, who are members of an employee organization or have designated it as their exclusive negotiating representative or have signed a petition requesting an election for certification or decertification of public employee representatives. Such designations shall consist of written authorization cards or petitions, signed and dated by employees, authorizing an employee organization to represent such employees for the purpose of collective negotiations or requesting an election for certification or decertification of public employee representatives; current dues records; an existing or recently expired agreement; or other evidence approved by the Executive Director or the Commission.

By *N. J. A. C.* 19 :11–1.12 the executive director of the Commission is required to "resolve expeditiously" the question concerning representation in any one of a number of specified ways. *N. J. A. C.* 19 :11–1.14 provides for recognition of the negotiating representative where enumerated criteria have been satisfied.

It is concluded from the foregoing review that the Commission is empowered to resolve representational disputes, not only through the instrumentality of an election but by any other appropriate method falling within the broad compass of section 5.3 so long as it is designed to ascertain the free choice of the employees.

The rule requiring the prior exhaustion of administrative remedies rests on the premise that such remedy is "certainly available, clearly effective and completely adequate to right the wrong complained of." *Baldwin Const. Co. v. Essex Cty. Bd. of Taxation,* 24 *N. J. Super.* 252, 274 (Law

Div. 1952), aff'd 27 *N. J. Super.* 240 (App. Div. 1953). See also *Mutual Home Dealers Corp. v. Comm'r of Banking & Ins.,* 104 *N. J. Super.* 25, 30 (Ch. Div. 1968), aff'd 55 *N. J.* 82 (1969). Of course, circumstances may sometimes appear in particular cases which would justify detouring the administrative agency. As Chief Justice Hughes, then a judge of the Superior Court, wrote in *Baldwin, supra*:

Traditionally, the former prerogative writs quickened where justice pointed to the urgency of relief and the futility of the administrative process, as where the jurisdiction of the statutory tribunal was questioned short of final judgment (*Schwartz v. Essex County Board of Taxation,* 130 *N. J. L.* 177 (E. & A. 1943)) ; where a constitutional question existed, insoluble in the administrative forum (*Schwartz v. Essex County Board of Taxation,* 129 *N. J. L.* 129, *supra*) ; where the facts and the applicable law were clear (*Lane v. Bigelow,* 135 *N. J. L.* 195 (E. & A. 1947)) ; where a pure legal question existed (*Conaway v. Atlantic City,* 107 *N. J. L.* 404 (Sup. Ct. 1931)) ; where the statutory remedy was not final and effective (as to accomplish an ouster from office) (*Koven v. Stanley,* 84 *N. J. L.* 446 (Sup. Ct. 1913)) ; where "important principles of law" required a prompt "judicial construction" (*State v. Betts,* 24 *N. J. L.* 555 (Sup. Ct. 1854)). [24 *N. J. Super.* at 274]

■ That the wholesome policy favoring resort to administrative remedies may not be lightly disregarded is demonstrated by the action of the court in *Essex Council #1, N. J. Civ. Serv. Ass'n v. Gibson,* 118 *N. J. Super.* 583 (App. Div. 1972). Although expressing its inclination to favor the substantive determination made by the trial court on the merits of the controversy, it nevertheless reversed on the ground that such a determination should not be made in the first instance by a trial court if the expertise of an administrative agency is available. It was further observed that the interests of justice did not there dictate the extraordinary course of bypassing administrative remedies made available by the Legislature.

■ In the case at hand it certainly cannot be said that the administrative remedy is not "certainly available, clearly effective, and completely adequate to right the wrong com-

plained of," or that the interests of justice, tested by the sampling of standards catalogued in *Baldwin, supra,* dictate that the facts presented be treated as an exception to the rule. The relief sought is recognition of plaintiff's representative status, and this by statute and regulations promulgated thereunder is fully within the power of the Commission to grant. The administrative remedy is therefore altogether viable. In this respect the case is different from *P. B. A. #208 v. Camden Cty. Bd. of Freeholders,* 124 *N. J. Super.* 119 (Law Div. 1973), where the court specifically stated (at 123) that its exercise of jurisdiction to compel adherence by the public employer with the New Jersey Employer-Employee Relations Act was based upon its judgment that the unfair labor practice there involved lay beyond the reach of any available administrative remedy.

Cases cited by plaintiff supporting the view that representative status may be achieved by an employee organization as the result of voluntary recognition by the employer, *i. e., N. L. R. B. v. Frick Company,* 423 *F.* 2d 1327 (3 Cir. 1970) ; *N. L. R. B. v. Broad Street Hosp. & Med. Center,* 452 *F.* 2d 302 (3 Cir. 1971), do not treat the narrow question presented as to whether the court may adjudicate the claim of voluntary recognition where it has not first been dealt with by an administrative tribunal. In the cases cited the opinions were based upon records brought up on review of administrative action.

The order to show cause will be denied for failure to exhaust available administrative remedies. Submit order consented to as to form or to be settled on notice.