Accordingly, the Judgment of Divorce is affirmed in all respects.

654 A.2d 479

GASPAR DANESE, PRESIDENT AND STATE DELEGATE AND THE NEW JERSEY STATE POLICE BENEVOLENT ASSOCIATION, LOCAL 116, INC., PLAINTIFFS–RESPONDENTS, v. FRANK GINESI, INDIVIDUALLY AND AS PRESIDENT OF THE NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION AND THE NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 25, 1995—Decided March 2, 1995.

18

Before Judges SHEBELL, SKILLMAN and KLEINER.

*Warren W. Wilentz* argued the cause for appellant, Frank Ginesi, (*Wilentz, Goldman & Spitzer,* attorneys; *Mr. Wilentz* and *Frank M. Ciuffani,* of counsel; *Mr. Wilentz, Mr. Ciuffani,* and *Anita J. Dupree,* on the brief).

*James R. Zazzali* argued the cause for appellant, New Jersey State Police Benevolent Association, (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Mr. Zazzali, Paul L. Kleinbaum,* and *Robert A. Fagella,* on the brief).

*Christine Farrington* argued the cause for respondents (*Biagiotti, Marino, Montecallo & Farrington*, attorneys; *Ms. Farrington*, of counsel and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

We granted defendants' motion for leave to appeal an order entered by the Law Division on August 9, 1994. However, we denied plaintiffs' cross-motion for leave to appeal and for further relief. We now reverse the order on review.

On or about March 28, 1994, plaintiffs, Gaspar Danese and the New Jersey State Policemen's Benevolent Association, Local 116, Inc., filed a verified complaint against defendants Frank Ginesi and the New Jersey State Policemen's Benevolent Association. The complaint avers that acts undertaken by defendant Association were ultra vires and beyond the scope of the Certificate of Incorporation, Constitution and By-laws of the Policemen's Benevolent Association (PBA). The complaint also maintains that Ginesi was not qualified under the By-laws, Certificate of Incorporation, or Constitution to serve as President of the defendant corporation, that actions taken by him while serving in that office were ultra vires, that political contributions made by the Association violated State laws and the Internal Revenue Code and that the Association failed to follow its own Certificate of Incorporation, By-laws and Constitution with regard to certain disciplinary proceedings which were conducted against Danese.

The complaint was accompanied by an order to show cause seeking to restrain Ginesi from acting as president, to restrain defendants from implementing an internal organizational ruling disciplining Danese, to restrain defendants from interfering in PBA Local 116's activities and to restrain the defendants' disbursement of monies to political campaigns and candidates. An order was entered denying plaintiffs' application for interim restraints. The court, however, ordered that a plenary hearing be conducted to establish a record on the following two issues:

1. The status of State PBA President Frank Ginesi to act in that capacity because of his job title as confidential assistant; [and]

2. The composition of the Judiciary Committee and the manner of selection of its members in order to determine whether or not its actions were appropriate.

Discovery was limited to those issues.

Plaintiffs took the depositions of Ginesi on May 25 and June 9, 1994. As a result of a discovery dispute during the first deposition, and over the plaintiff's objection, Ginesi left before the deposition was completed. Plaintiffs then proceeded by order to show cause seeking to hold Ginesi in contempt and for an order compelling defendants to produce their Certificate of Incorporation and tax returns. On May 31, 1994, a hearing was held on this issue. On June 14, 1994, an order was entered denying plaintiffs all relief except to obtain a copy of defendant PBA's Certificate of Incorporation and a certification from its accountant that the proper tax filing from 1993 was submitted. Defendants conducted the deposition of Danese on June 13, 1994.

On July 12, 1994, at the plenary hearing, plaintiffs relied on the deposition of Ginesi, the exhibits marked during the deposition, and incorporated their brief into the record. Defendants provided certifications from the witnesses they were going to call, which included Commissioner of Corrections William Fauver, Commissioner of Labor Peter Calderone, PBA Local 105 Executive Vice President Edward Murphy and former Director of the Office of Employee Relations Melvin Gelade. Plaintiffs objected to the certifications as defendants did not provide them prior to the hearing. The court permitted defendants to make these and further submissions with regard to these two issues by July 26, 1994 and allowed plaintiffs to reply no later than August 2, 1994.

Thereafter, plaintiffs served all the witnesses with a Notice to Take Depositions. Defendant moved to quash the subpoenas returnable on July 29, 1994. Plaintiff opposed defendants' motion to quash and moved to extend discovery. On July 29, 1994, before the parties could be heard on the motions, the Law Division judge

unexpectedly issued an opinion from the bench on the issues argued at the plenary hearing.

On August 9, 1994, the court entered the following order:

ORDERED, that the Court has jurisdiction to determine whether defendants complied with the By-laws of the defendant State PBA in disciplining plaintiffs; and it is further

ORDERED that defendant Frank Ginesi was not eligible to serve as State PBA President 1993–94 since his status as a Senior Correction Officer and/or Confidential Aide and/or retired is not that of a "patrolman" within the meaning of the State PBA's statutory authority, Amended Certificate of Incorporation and By-laws; and it is further

ORDERED that the Court shall determine whether the Judiciary Committee was selected and authorized to hear and adjudicate the disciplinary charges against plaintiffs based upon statute, By–Laws and common law; and it is further

ORDERED that this Order and further proceedings shall be stayed until conclusion of proceedings in the Appellate Division if defendants file a motion for leave to appeal by August 12, 1994 after which the stay shall expire.

The trial court granted a stay of all proceedings pending disposition of this appeal.

Plaintiffs' complaint arises out of disciplinary charges filed by PBA Secretary Raymond Graves against Danese in December 1993. The charges alleged that Danese committed various infractions of PBA by-laws. Danese contested the charges, and they were ultimately decided by the State PBA Judiciary Committee on March 9, 1994. Danese then appealed to the PBA Board of Delegates, the PBA's governing body, which affirmed the Judiciary Committee's decision in May 1994.

Plaintiffs allege in their complaint that Ginesi cannot be president of the New Jersey PBA as he is not a proper member of a PBA local. Plaintiffs' allegation is based upon Ginesi's simultaneous, temporary assignment as confidential assistant to Corrections Commissioner William Fauver for the period he held the PBA presidency. This assertion was not raised through the State Association's review mechanisms, and, therefore, it was never the subject of a decision by the PBA Judiciary Committee or the governing body of the Association. Further, although plaintiffs did not allege in their complaint that Ginesi was a "supervisory"

employee and thus ineligible for membership, they relied on this theory in seeking to enjoin Ginesi from serving as PBA president.

Defendants correctly assert that the courts lack jurisdiction over the allegations contained in the complaint, and that plaintiffs have failed to exhaust internal remedies. In accordance with the State PBA's Constitution and By-laws, Article XXIV, "[n]o court proceedings shall be instituted or maintained by any member against this Association or any Local Association without first seeking redress from and within this Association."

There is no need for us to detail the various positions of the parties as to Ginesi's status in the law enforcement community or his eligibility to be a member of and hold office in the State PBA. It is sufficient to point out that the State PBA is a statewide organization of over 30,000 active and retired law enforcement officers. It has been in existence for almost 100 years and has chartered over 300 affiliate PBA locals throughout the State. It is governed by an Amended Certificate of Incorporation which specifically provides that: "The governing and legislative powers and the control of the association shall be vested in a Board of State Delegates representing each local association." The certificate gives the governing body the power to "make additional rules concerning qualifications for membership," and its By-laws also provide for membership. A Judiciary Committee, to be appointed by the President, is established in Article XV of the by-laws.

Apparently, the Law Division judge entered the Ginesi controversy, instead of limiting review to the immediate issues relating to the Danese charges, because she concluded that the PBA's 1934 amended Certificate of Incorporation required that eligibility for PBA membership and office be limited to "patrolmen", and that Ginesi's position as a Senior Correction Officer and/or Confidential Assistant to the Commissioner of Corrections did not meet this requirement. Thereby viewing Ginesi as disqualified from membership and ineligible for its presidency, the judge concluded that the Judiciary Committee was improperly constituted because its

members were Ginesi appointees. She also questioned whether the delegates had the requisite years of service.

According to the certification of the Executive Vice President of the State PBA, on August 23, 1994, as a result of the judge's decision, the Articles of Incorporation were amended. Although the Association did not believe that the Articles needed revisions, they were amended to meet the concerns reflected by the court. The amendment provides that all "law enforcement officers" active or retired are eligible for membership, and further incorporates the by-laws of the organization in terms of eligibility to hold office. The amended Certificate of Incorporation was approved unanimously by the Board of Delegates and duly filed with the Secretary of State.

There is no dispute by either party that the courts have jurisdiction to review the disciplinary decision of the State PBA Judiciary Committee to determine if its decision was arbitrary and capricious. On this issue, Danese has exhausted his internal appeals. The issue before us is the validity of the trial court's assumption of jurisdiction to determine Ginesi's status as a member and officer of the Association, and the court's determination that it had jurisdiction to determine if the Judiciary Committee which acted against Danese was selected and authorized to hear and adjudicate the charges in accordance with the Association's By–Laws.

New Jersey courts are loathe to interfere with the internal management of an unincorporated, voluntary association. See *Leeds v. Harrison,* 9 *N.J.* 202, 216, 87 *A.*2d 713 (1952); *James v. Camden County Council,* 188 *N.J.Super.* 251, 257, 457 *A.*2d 63 (Ch.Div.1982). "Deference has always been afforded to the internal decision making process of the private association." *Loigman v. Trombadore,* 228 *N.J.Super.* 437, 449, 550 *A.*2d 154 (App.Div. 1988). The courts recognize an association's right to adopt, administer and interpret its own rules without judicial intervention. *Id.* at 449–450, 550 *A.*2d 154. *See also Barnhart v. United Automobile,* 12 *N.J.Super.* 147, 152, 79 *A.*2d 88 (App.Div.1951);

*Calabrese v. Policemen's Benevolent Ass'n,* 157 *N.J.Super.* 139, 147, 384 *A.*2d 579 (Law Div.1978).

In this case, the trial judge made mention of these well-settled principles, but decided to exercise jurisdiction. The trial judge stated that even though there is no New Jersey case law on the subject, by interpreting Federal law it is indicated that the court can interfere if it is shown that the association has not followed its own by-laws and rules. The trial court's view of its need to accept jurisdiction was mistaken.

■ To begin with, it is clear that:

The courts will not, as a rule, take jurisdiction of a matter involving the internal affairs of an association, even in cases where judicial interference is otherwise warranted, unless the complaining member has exhausted such remedies as may be provided by the laws of the association itself.

[7 *C.J.S. Associations* § 8 (1980); *see Calabrese, supra,* 157 *N.J.Super.* at 145–147, 384 *A.*2d 579; *Patrolman's Benevolent Ass'n v. Montclair,* 128 *N.J.Super.* 59, 63, 319 *A.*2d 77 (Ch.Div.1974).]

Plaintiffs' assertion that Ginesi cannot properly be a member of PBA Local 105 and cannot serve as President to the State PBA because of his classification as a "confidential assistant" was never presented to the Judiciary Committee or the Board of Delegates for determination. Therefore, the trial judge should not have intervened as the plaintiffs had not exhausted their internal remedies.

"The rule requiring the prior exhaustion of administrative remedies rests on the premise that such remedy is 'certainly available, clearly effective and completely adequate to right the wrong complained of.'" *Montclair, supra,* 128 *N.J.Super.* at 63–64, 319 *A.*2d 77 (quoting *Baldwin Constr. Co. v. Essex County Bd. of Taxation,* 24 *N.J.Super.* 252, 274, 93 *A.*2d 800 (Law Div.1952), *aff'd,* 27 *N.J.Super.* 240, 99 *A.*2d 214 (App.Div.1953)). In Article XXIV, there is an available, effective and adequate remedy for the wrong complained of, which the plaintiffs did not utilize.

Further, private associations, such as a PBA, are entitled to the utmost latitude in their regulation and management of internal affairs. *Loigman, supra,* 228 *N.J.Super.* at 450, 550 *A.*2d 154. In *Falcone v. Middlesex Co. Medical Society,* 62 *N.J.Super.* 184, 199,

162 *A*.2d 324 (Law.Div.1960), *aff'd,* 34 *N.J.* 582, 170 *A*.2d 791 (1961), the court held that associations like the PBA have the right, as a matter of law, to elect and select their membership and that "membership may be increased or decreased at will, without regard to standards, arbitrariness or otherwise, and without judicial interference." *Id.* Therefore, judges should refrain from assuming the role of "super-trier" of the internal processes of a private organization. See *Napolitano v. Trustees of Princeton Univ.,* 186 *N.J.Super.* 548, 570, 453 *A*.2d 263 (App.Div.1982). Here, the trial court's intervention was an unwarranted intrusion and interfered with the Association's right to select their members and to establish additional membership eligibility pursuant to its by-laws and articles of incorporation.

Although we do not pass on the merits, it is evident that the Supreme Court has rejected an argument similar to that apparently seized upon by the trial court here, that the membership may only be controlled in the certificate of incorporation. In *Leeds, supra,* our Supreme Court determined that "the corporate body is vested with the reserve power to prescribe, and from time to time change, the qualification of both officers and members, consistent with its basic powers." 9 *N.J.* at 212, 87 *A*.2d 713. The Court said:

> It is a corollary that where, as here, there has been long acquiescence in a by-law prescribing qualifications of members, and the association is united in the principles and beliefs thereby laid down as the standard membership, it is ordinarily not ground for judicial intervention that the by-law has unduly narrowed the field of action prescribed by the charter.
>
> [*Id.* at 216, 87 *A*.2d 713.]

The trial court improvidently reviewed and determined the eligibility of Ginesi for membership and office without regard to the failure of plaintiffs to adjudicate the issues internally, and without proper deference to the PBA's by-laws and long standing practices. The trial judge should not have interfered in the internal affairs of the State PBA as to Ginesi's status and as to its compliance with its Certificate of Incorporation and By-laws.

The order as it pertains to those issues is, therefore, reversed. The only issue to remain before a trial court is the review of the

disciplinary decision against plaintiff Danese and whether he should be afforded the remedy of reinstatement. We remand this issue to the Chancery Division as the more appropriate tribunal to consider such matters.[1] See *R.* 4:3–1; *Boardwalk Properties, Inc. v. BPHC Organization, Inc.,* 253 *N.J.Super.* 515, 526, 602 *A.*2d 733 (App.Div.1991); *Zoneraich v. Overlook Hosp.,* 212 *N.J.Super.* 83, 514 *A.*2d 53 (App.Div.1986); *Government Employees Ins. Co. v. Butler,* 128 *N.J.Super.* 492, 495, 320 *A.*2d 515 (Ch.Div.1974). We, therefore, do not consider defendants' assertion that the Law Division judge should not preside over the remaining aspects of this litigation because of extra-judicial correspondence explaining the judge's opinion.

The portions of the order under review are reversed and only the remaining issue pertaining to the review of the Judiciary Committee's decision to discipline Danese is remanded to the Chancery Division.

Reversed and remanded to the Chancery Division, General Equity Part.

---

[1] We note that it was represented at oral argument that plaintiffs originally attempted to file their complaint in the Chancery Division.